Scoeield, J.,
delivered the opinion of the court:
The facts in this case are fully stated in the findings by the court, and it is unnecessary to repeat them here.
The claimant’s cause of action is set out in the third, fourth, fifth, and seventh paragraphs of his petition.
Thethird paragraph, including the amendment thereto, claims compensation for 1,159 tons and 348 pounds of hay delivered in the mouths of June, July, and August, 1864. This claim is entirely swept away by the eighth finding of fact. By that *10 finding it appears that'so much of this hay as was in fact delivered was included in vouchers given by Captain Durbin to the claimant, and that the vouchers were afterwards paid by the defendant. The whole of the claim included in said third paragraph must, therefore, be disallowed.
It appears by the seventh finding of fact by the court that the claimant’s cause of action, as set forth in the fourth.paragraph of his petition, has all been settled and paid by the defendant, except 200 tons of hay cut on Salisaw River, Cherokee Nation, and destroyed by the enemy September 19 and 20, 1864. It appears by said seventh finding that the $16 per ton demanded by the claimant was a fair and reasonable price, and that the hay was lost by the failure of the defendant to furnish sufficient protection. For this hay, in the opinion of the court, the claimant is entitled to recover $3,200. It comes within the rule laid down by Justice Miller, in delivering the opinion of the court in United States v. McKee (97 U. S. R., 235, and repeated on page 236,) to wit: “That the failure to afford such protection renders the United States responsible for the value of property actually lost for want of it.”
The cause of action set forth in the fifth paragraph of the claimant’s petition consists of expenses and loss of time occasioned by the failure of the defendant to furnish sufficient protection. He states his loss at $7,625, and it appears by the ninth finding of facts that the loss amounted to $5,000. This sum is made up, first, by loss of time and expenses incurred in the removal from the south to the north side of the Arkansas river in the month of July; and second, by loss of time and expenses in going from Fort Smith to Fort Gibson, between the 30th of July and the 8th of August. These two bills should have been separated; for, in one view of the case, one might be allowed and the other rejected. They were not, however, separated in the findings of the court; because, as it there appeared, they were, in the evidence, inextricably mixed. But, in the view of the case taken by the court, their separation becomes unimportant. In the opinion of the court the claim for loss of time and expenses occasioned by the removal from the south to the north side of the river prior to July 30, 1864, is barred by the statute of limitations. On that day his work, under the contract of June 1, 1864, was terminated, audit was . thenceforth carried on under the new or modified contract of July *11 30. • At that time these expenses were all incurred. On the 8th of August, in the settlement with his hands, he reckoned them up. It makes no difference that some of these expenses were not paid by him until about the middle of October following. His right to recover from the defendant ivas not contingent upon the payment of his own debts. The statute would run from the 30th of July, 1804, and this suit was begun September 15,1870. The claim for loss of time and expenses in going from Fort Smith to Fort Gibson, between the 30th of July and the 8th of August, originated under the new or modified contract of July 30,1864. In that modification no provision was made for transportation or expenses. Having contracted to do the work at Fort Gibson, lie is bound, in the absence of agreement to the contrary, to defray the expenses of his journey.
In the seventh paragraph of the petition the claimant asks to be allowed prospective profits on the hay which he contracted to.deliver, and which he failed to deliver by reason of the failure of the defendant to furnish u sufficient guards and escorts.” By the correspondence between Captain Durbin and the claimant, dated August 4 and 7, 1804 (recited in the tenth finding of facts), as understood and construed by the court, the amount of hay to be delivered is reduced to 4,000 tons. The amount for which the claimant is entitled to be credited, as appears by said tenth finding, is 3,630 tons,- leaving to be delivered 364 tons. It also appears by said tenth finding that the prospective profits were $10 -per ton. If this claim is allowed, it amounts to $3,640. But the court holds that it cannot be allowed. In the case of the United States v. McKee (97 U. S. R.), the Supreme Court rules against such prospective profits. That case and this are exactly alike. The two contracts are in the same words, and the claim for prospective profits originated from the same causes.
The decision of the court is that the claimant recover of the defendants the sum of $3,200.